Good morning, everyone. Judge Callahan and I would like to welcome and thank Judge Bolton from the District of Arizona, who is sitting with us this morning. Welcome and thank you, Judge Bolton. Thank you. We'd also like to welcome the class who is here watching the proceedings. Thank you very much for taking the time to come and participate in our judicial system. We hope that we don't bore you too much. The cases will be called in the order listed on the docket. The first case on calendar for argument is Kowalowski v. Nevada County. It's submitted on the briefs. Excuse me. The first case on calendar for argument is United States v. Sanmina Corporation. Counsel for appellant, please approach and proceed. Good morning. May it please the Court, my name is Michael Lieb. I represent Sanmina Corporation. We've been here before. I have, Your Honor, and I'd ask to reserve two minutes for rebuttal. Please be informed that the time shown is your total time remaining. Understood, Your Honor. Thank you. All right. And we were here before, and Your Honor was the only one of the three members of the panel to enjoy our presence last time. But we are back with a little bit of a better record, which is, I think, what this Court had in mind. And in particular, the record that we have right now is the record created by Judge Alsup, who reviewed in camera the attorney memos. And what he concluded is that they constitute, and I'll quote it, legal advice communicated in confidence to Sanmina executives. That's a critically important finding because that renders the contents of those attorney memos core work product. Is the other side disputing that at this point, though? Aren't we focused on waiver to a large extent? We are focused on waiver, Your Honor. And so since you don't have a lot of time, then if accepting that that has been found, I'm curious about the findings that the judge made regarding waiver and how the judge treated just in terms of I wasn't there last time, but I'm here today. And it would seem you first had, I think it was Judge, is it Grayall? Is that how you say it? And then this time it was Grayall, and then it was Judge Alsup this last time. So it seems that the district court found that Sanmina disclosed the attorney memos to DLA Piper, not for the purpose of obtaining legal advice, but for the purpose of determining the value of Sanmina's AG common stock. And so if that's a finding of fact, then you would have to show that it's clearly erroneous. Well, there are two thoughts that I have on that, Your Honor. First of all, there is no evidence in the record that Sanmina only gave these documents to DLA Piper for the purpose of providing this valuation analysis. Indeed, the declaration of Brian Dahlke says clearly that DLA Piper was consulted for tax advice as well concerning the propriety of the property. Well, I know that that's what, I know that your lawyer said that, but there's not something from DLA that says we were contacted to do both a fair market value and consulted for outside legal counsel or whatever. So there's nothing from DLA, right? That's correct, Your Honor. Same way. So it seems that Judge Alsup did make that finding. Does that mean that Judge Alsup didn't believe your lawyer? Well, I was the lawyer, so I — Okay, well, they didn't believe you. Okay, just said, no, you went to DLA to get a fair market value. There is literally no evidence in the record that would support that finding, Your Honor, because there's literally — Well, wasn't the evidence that Judge Alsup relied upon the actual report that was prepared by DLA Piper that said that's what they asked us to do? There's no question that DLA Piper was asked to prepare a valuation analysis, Your Honor, and we are not contending that in doing that DLA Piper was acting as counsel. So I just want to make that clear. But the record is also that DLA Piper was providing confidential advice on the propriety of the deduction in addition to providing the appraisal report. But what I'd like to say is — Before we leave that, could you point us in the record what portion of the record you're relying upon to support your argument that DLA Piper was rendering legal advice? Where is that in the record? It doesn't say legal advice. It says advice on the propriety of the deduction. Well, but that's consistent with a valuation analysis as opposed to legal advice. So that's why the question that Judge Callahan raised is how can that ruling by the court be clearly erroneous if there is no clear evidence in the record that there was legal advice sought? Well, the record — I understand that point, Your Honor, and it does not say legal advice in Mr. Dahlke's declaration. So if that's the — if the court is of the mind that that leaves the court in the situation where it must presume that Mr. — I'm sorry, that DLA Piper was consulted for other than legal advice, then so be it. I don't think that changes the outcome. Well, we have to — if we can't find clear error in the district court's finding, do we have an option to proceed in any other way? No, Your Honor, but it doesn't change the outcome. Okay. And that's — Tell us why. Because the key to waiver is disclosure, and disclosure must be of the contents of the attorney memos, and the attorney memos' contents were never disclosed to anyone who was not in a confidential relationship with Sanmina, and that includes DLA Piper. And as we pointed out in our reply brief, the government agreed with that analysis. The government actually castigated us below because we argued that, in substance, of course, the providing of the memos to DLA Piper didn't effectuate a waiver, and DLA Piper — and the government said, that's not what we're arguing at all, and we quote that specifically in page three of our reply. So the government itself disclaimed that argument. They are now claiming that DLA Piper functioned as a conduit. I believe that's their argument. Well, and that would be under that the conduit language comes in if you're going for work product, right? That's — It would be because — That's correct. It would seem to me that it's possible that you could argue that Judge Alsup conflated attorney-client privilege with work product privilege and didn't separate those out. And the case law isn't entirely clear in the Ninth Circuit exactly what the test is for work product. But let's assume that it is admissible under — that you waive the attorney-client privilege by going to DLA Piper. If you didn't waive the work product privilege and the two memos are work product, does that — that's a separate analysis is what you're arguing. That's correct, Your Honor. And so you're saying you could lose on the attorney-client privilege but prevail on the work product privilege and they still don't get it. That's correct, Your Honor, because the work product privilege, in order for that to be a waiver there must be a disclosure to an adversary. Well, the law isn't as clear as it could be. I mean, I looked and there's the D.C. Circuit. You know, there's — I mean, there's different tests. I mean, I think we would have to publish in that area and say exactly what the test is. If the test is different, I think what Alsup did was he cited the Weil case as covering both of them. Correct. Which might not be exactly correct. Weil is an attorney-client privilege case, Your Honor. Okay, so that's — so what you're saying under the — if there is a test that you either have to be an adversary or you have to be a conduit to an adversary, then we would have to clarify what that test would be. That's correct, Your Honor, and I believe that U.S. v. Deloitte does a good job in that area. I know I'm running out of time, but — I know. I have some questions, though. May I ask a question since I'm not on Redux here? I'm on the first time with this. Okay, I really am trying to get to the bottom. You know, there's a part of me that I always like to figure, what are people fighting about? Why are they fighting about certain things? Because it seems — and correct me if I'm wrong along the way. This is pretty early in the proceedings. It would seem to me if the litigation goes forward, let's just say on the work product you prevail. You don't have to give it right now. If you want to offer that fair market — if you want to offer them as an expert on fair market value, that they're going to — you're going to have to turn over what the person relied upon in order to come to that conclusion. At some point, if you want to — you can't be shielded from that forever. If — first of all, I agree with Your Honor, and I'm glad Your Honor raised the point that this is not the time when DLA Piper is functioning as an expert. This is not even litigation over the propriety of the worthless stock deduction. This is just a summons proceeding that functions like a subpoena. But if DLA Piper were analogized to be an expert, which is what Judge Alsup did at oral argument and then disclaimed it in his ruling, what we would have to turn over are the facts and data on which they relied, not the entirety of the attorney memos. That's what the rules currently say. So we would not, even if we were to view DLA Piper as a testifying expert, have to provide the government with the attorney analysis. Okay. Well, let's just say that the IRS decides they're not going to give you this — you're not going to be able to take this deduction. Then if you want to go into litigation, if they disallow your deduction, then am I correct in that then you have to pay what you owe in your taxes to ever bring a lawsuit in court, right? Your Honor, I apologize. I'm not a tax lawyer, so I couldn't tell you procedurally. Well, if that were the — I'm trying to figure out, why does the IRS want to know what the lawyers think of your case? Is there some way that you have to pay less if you had a good faith reliance? Let's just say your lawyer — let's say — and I'm saying this hypothetically. Let's say the lawyer memos say, this can be the argument that you make, but I think you're going to lose on that, and I think you're going to lose for X, Y, and Z. And why would they want that information? How would that damage you going forward? That would not affect the issue of whether the worthless stock deduction was valid or not, but it could affect penalties that they could impose upon Samina if Samina was acting in bad faith and claiming — Okay. That's what I figured. Counsel, can we just clarify? Are we talking about the attorney-client privilege waiver at this point or the work product privilege waiver? Work product. I thought the government had disavowed any reliance on the waiver of the work product privilege. They disavowed any reliance upon the contention that providing the report — I'm sorry, providing the memos to DLA Piper constituted a waiver of attorney work product. They argued instead that by turning over the DLA Piper report to the government, that that constituted a work product waiver. And now on appeal, and in distinction from what they argued below, they are now arguing that by giving the report — I'm sorry, by giving the memos to DLA Piper, there was a waiver. But as we said, and that's on page three of our reply brief, they expressly disavowed that argument below. I thought they disavowed that, too. Yes. So we'll see what the government's position is when we hear from the government. Could we hear from the government? And then did you have something final that you wanted to say? And I'll give you a minute for rebuttal. I'll take my time on rebuttal, Your Honor. But if I could just wrap up by saying this. It is virtually impossible to get core work product. And the reason I started with Judge Alsop's finding is although he ruled against us, he found that this is core work product. The government is trying to get the thoughts and analysis of Sanmina's counsel, and there has to be an overwhelmingly good basis to do that.  I mean, even though it's virtually impossible, it's not impossible. That's true. But they have not shown waiver because we haven't disclosed the contents to an adversary unless DLA Piper is considered a conduit to an adversary, which, as Your Honor noted, and as we noted, the government's already abandoned that argument. All right. We'll see what the government has to say, and then we'll give you some time for rebuttal. Thank you, Your Honor. I appreciate it. Thank you, counsel. The time to get my questions answered. Good morning, counsel. Good morning. Good morning. Good morning, Your Honor. I'm Bethany Hauser here on behalf of the United States. In this case, send me an away to the attorney client privilege and the privilege for the attorney work product with regard to the two memos when it gave the IRS the valuation report prepared by DLA Piper that expressly relied on those two memos. Well, it seems, though, that Judge Alsup, that I can make an argument that he conflated those by just applying he didn't really do a separate analysis on the work product. I questioned counsel for Samina about am I stuck with was there a finding that they didn't consult DLA for legal purposes? Because if they had consulted legal DLA for outside counsel, I mean, we know that the two attorney declarations, let's assume that they're in-house counsel. There could be reasons that legally you would want to consult outside counsel before you would take a $503 million worthless stock deduction. So if, in fact, that had been the finding, then we would have to look a little bit differently. But if we accept that as something we have to take, the work product seems to be a different test. And so how, and if that's work product, I don't know why you can't do your own research. I don't know why you would be entitled to know, let's assume that it said that the attorney told them, well, here's a way that you can go, and this is what I would say, this is your best argument. But I don't think, I'm not advising you to do that because I think that you're going to lose. Why would you be entitled to that? Like, you know, I mean, of course you'd love it. It's kind of like you'll love a confession in a criminal case, but why aren't you overreaching here? Well, the problem is that the DLA Piper report, in the absence of those memos, the DLA Piper report just isn't complete. The DLA Piper said in the report that they ordinarily would have valued this transaction at the book value. But they didn't do that based on, is the language in the report, based on the memos. So why can't you just say it doesn't? We're talking about worthless stock, not frivolous stock, because that would be a whole different issue, right? So why can't you just look at that report, they submit it, and say, this isn't good enough. We're not giving it to you, and this is what, this is the taxes that we're going to assess. Why do you need to know what the lawyer told them? Well, I think if Sanmina had decided to withdraw the report rather than turn over the documents, then that would be the course of action. But can't you just look at it and say, and until you get further in the litigation, just say, hey, this isn't good enough? Well, the point of the administrative proceeding is to, for the IRS to make an informed decision about whether to proceed with litigation. But why can't you do your own research on this? I mean, you guys are tax experts. You seem to know more about taxes than he kept telling me he wasn't a tax lawyer, and I'm trying to ask this. There are plenty of things I don't know about taxes, too. But the IRS, of course, could do its own valuation, but it's entitled to ask, the taxpayer can't take a deduction without a good faith belief that it's entitled to that deduction. And so the IRS is entitled to ask about both, what is the true value of that stock, and also, did you have a good faith belief that that was the value of that stock? So, but if they told, if they don't have a good faith belief because their attorney told them, I don't think you're going to win, why are you entitled to that, why isn't that work product? Well, the court, the district court, Judge Alsop did find that it was work product. He found that it was waived because of the reference in the report, and because the memos were turned over to DLA Piper, and DLA Piper relied on them in the report. So, counsel, is your argument that if you can look at the source documents, that gives you a basis to determine whether or not there was a good faith reliance on those documents in taking the deductions? Is that your argument? When the IRS considers the value on its own, it would like to know, is this, what is this stock worth? Any information that informs the IRS's ability to analyze what that stock is worth is going to help the IRS to make the correct, the best decision it can about that question. Well, but it also gives you access to stuff that you would never have access to otherwise. I mean, if the law favors them, then why isn't that enough to, if the law favors them, you can do your research on the law. And if they found a loophole that works for them, albeit, and sometimes they do, and if you do the research and find, you're right, there is a loophole that allows you to do that. Why does it matter what their state of mind was? Because the law allows it. Isn't that per se good faith? If they're allowed under the law, why do you need to know what they thought? If they're allowed the deduction, they'll be able to get the deduction. But in a case like this where there's a valuation issue, there's often a dispute about the amount of the deduction or the size of the value. And to determine that, there are penalties that can apply to misvaluations. And one defense to those penalties would be a contemporaneous valuation report. But you're not even there in the process yet. So isn't this just a little early to say, hey, give me everything you have? Give me all your work product. Give me everything you've done. Again, I agree that if Sanmina were to withdraw its reliance on this report, then the IRS would not have much call to go forward saying that they want the memos that underlie the report. But the IRS, as Judge Alsop said, nobody could fairly evaluate this report without being able to see the memos that underlie it. Because the report only touches upon the reasoning. So why not just then, if you just get the facts, don't you have all the facts? You have all the facts. You can research the law. The facts would have supported the book. The facts, what DLA Piper says, would have supported the book valuation. The facts are the contract and the amounts of the contract that was in the, that they entered between the entities in order to show a debt that they now say was worthless. So, counsel, just to bring us back to what we have to decide here today. We have to decide whether or not Judge Alsop was correct in determining that the work product privilege had been waived. What is our standard of review from your perspective? Standard of review for work product. For us to make the decision whether or not Judge Alsop erred. I believe you've reviewed that to know about, Your Honor. Okay. And what about the findings of fact? Findings of fact for clear error. Okay. So why don't you walk us through whether or not there was clear error in the findings of fact made by Judge Alsop and whether or not on the ultimate question he erred. Could you talk with us about that on the waiver of the work product issue? He found that the memos were, that it was necessary to read the memos in order to understand the report. And because of that, and because Sanmina has relied on that report and given it to the IRS, therefore they've waived the privilege with respect to the work product. And so how was the information given to the IRS? It would have to be through the DLA as a conduit. Is that your argument? Yes, through the DLA Piper report. Do you agree that the test is that it has to be, that it's different than the attorney-client privilege waiver? You can't conflate the two, right? Right. And he appeared to conflate the two and just cited while. So if, and the Ninth Circuit hasn't exactly clearly set out, but let's say we set out that it has to be to an adversary or it has to be a conduit of an adversary. Did he say that DLA was a conduit to an adversary? Well, he said that in turning the documents over to DLA Piper, that Sanmina anticipated they would be turned over to the IRS. So I believe under the case law about conduits, that shows that they anticipated DLA would be a conduit to the IRS. So counsel, if the district court in fact conflated the analysis for the privileges for the waiver, would that be error? This court could apply de novo analysis and applying the correct analysis. And reach the same conclusion in your view? Reach the same conclusion, yes. If there are no other questions. Thank you. It appears not. Thank you, counsel. Rebuttal. One minute. Counsel, the government's lawyer said, well, Sanmina can always withdraw the report and its reliance on it if you don't want to disclose some of the documents that the report was based on. Is that something that Sanmina could do at this point? No, Your Honor. We're required to substantiate the worthless stock deduction. I think Judge Callahan had the analysis right, which was we're not at the stage right now where we're doing anything other than submitting tax returns, which the IRS is analyzing and investigating to determine what position they want to take on the reasonableness or the propriety of the worthless stock deduction. But if the report is required to substantiate the deduction, doesn't that strengthen the government's argument? No, Your Honor, because the report is still an argument that the disclosure of the report to DLA Piper somehow constituted a conduit to an adversary. The report was not, I'm sorry, the attorney memos were never disclosed to any adversary, and it's not possible to construe DLA Piper as an adversary or a conduit. I think the attorney for the government is saying impliedly Judge Alsup made the ruling that DLA was a conduit to the IRS. I believe that, well, I don't, because Judge Alsup didn't distinguish between attorney-client privilege and attorney-work product, it's not entirely clear to me that he did that. But I think that he certainly believed essentially what Your Honor has just said. I know that's not well articulated, but... If I didn't understand it, that doesn't mean it's not well articulated, but I didn't understand what you just said. I don't believe that Judge Alsup ever came out and said that DLA Piper was a conduit of the attorney memos. Isn't that implicit in his ruling, though? Yes, that's what I was trying to say, Your Honor, thank you, and that's a much simpler way of saying it is implicit in his ruling, but the problem with his ruling is he doesn't really address the fact that work product needs to be disclosed to an adversary, and the reason it's implicit... Well, would the IRS be an adversary in this context, though? Yes, but no part of... I'm sorry, I didn't mean to cut you off. Go ahead. No part of the content of the attorney memos were disclosed to the IRS. If they were disclosed indirectly by DLA Piper, relying on them, I think that was the avenue of the analysis. That's not a basis for attorney work product waiver, Your Honor, and I do want to make, I know I'm way out of time. What about the issue of fairness, then? That you say, well, it's not waived, but we're still relying on it, but you can't see it, isn't part of the waiver analysis whether it would be fundamentally unfair to continue to protect the document upon which the DLA Piper relied. I'd say the opposite, Your Honor, which is it's fundamentally unfair for the IRS to have access to the legal analysis of Sanmina's counsel. But DLA Piper didn't give legal advice. Is that your argument, that DLA Piper gave legal advice? No, no, no, when I say the legal advice of Sanmina's counsel, I'm talking about the legal advice in the attorney memos, that it's fundamentally unfair for the IRS to have access to that, and in fact, even if DLA Piper were viewed as a testifying expert, which they're not, the government still wouldn't be entitled to the core work product in those memos, because under the federal rules of civil procedure, they are only entitled to the facts and data. And if I could just make one further point, I know I'm way out of time. As the record makes clear, all of the underlying transactional documents were disclosed to the IRS. The DLA Piper report doesn't sit on its own. It sits on a stack of transactional documents that describe all of these transactions and the reasons for them, and the attorney memos are simply mentioned in a footnote as part of the DLA Piper analysis. It simply does not fit under any of the rubric of waiver of attorney work product, because there's no disclosure, direct or indirect, to an adversary, and of course the government has abandoned the argument, and properly so, that DLA Piper can be viewed as a conduit. Thank you, counsel. Thank you to both counsel for your arguments. The case just argued is submitted for decision by the court. The next case, Daly v. Garrett, has been submitted on the briefs. The next case on calendar for argument is Geiser's Development Partnership v. Geiser's Power Company.
judges: Rawlinson, Callahan, Bolton